James W. SMALLWOOD, Appellant,

v.

UNITED STATES, Appellee.

No. 10896.

District of Columbia Court of Appeals.

Argued Sept. 29, 1979.

Decided Oct. 24, 1979.

Reconsideration Denied Jan. 7, 1980.

Kenneth E. Labowitz, Alexandria, Va., appointed by this court, for appellant.

Mark J. Biros, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Peter E. George, and E. Lawrence Barcella, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief for appellee. Carl S. Rauh, U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before KERN, GALLAGHER and MACK, Associate Judges.

PER CURIAM:

Appellant challenges his judgment of conviction for armed robbery and related crimes on the grounds that (1) the trial court improperly proceeded with his trial to final judgment while he was a fugitive, and (2) the government has improperly permitted him to remain in the custody of the State of Maryland serving sentence on a conviction unrelated to the instant case in violation of the Interstate Agreement on Detainers (IAD), D.C.Code 1973, § 24–701 *et seq.* A chronology of the pertinent facts is necessary to place in context his contentions.

The robbery occurred in December 1973 and appellant and his two codefendants were arrested on the same day within an hour after the crime. They were indicted in February 1974 and tried and convicted three months later in May.[1] Since appellant had filed between indictment and trial a notice of intention to raise the defense of insanity, a bifurcated trial was ordered as to him; therefore, subsequent to the trial on the merits, he was committed at his request to St. Elizabeths Hospital for evaluation of his mental condition at the time of the crime.[2] In August and September 1974, appellant was allowed to appear in the federal district courts of South Carolina and Maryland to plead guilty and be sentenced for crimes he had committed in those jurisdictions before the trial in the instant case.

In December 1974, appellant, while being transported from the Hospital to the Superior Court for a status hearing, overpowered his guards and escaped. In March 1975, the court held a hearing at which defense counsel, the prosecutor and a forensic psychiatrist who had examined appellant shortly before his escape were present. The Assistant United States Attorney advised that appellant "is still a fugitive" and counsel, in response to the court's inquiry, answered that he had had no contact with appellant and had been unable to advise appellant that "his hearing was going forward." (Supp. Record at 7.) The court, after hearing testimony from the psychiatrist (who was qualified as an expert witness), opined

> that it does seem to me Mr. Smallwood's failure to appear is voluntary. I think it's quite consistent . . . he may try to escape and it's not the product of any mental disease or defect. . . . He did have considerable time waiting and he knew that he was coming before me for either a continuation of his trial or for sentencing in an offense . . . carrying a maximum penalty of life imprisonment. . . . I see nothing inconsist-

---

1. We reject appellant's contention that the evidence was insufficient to support his conviction. He was arrested in the getaway car, which contained some of the loot from the robbery, in the company of two persons and there was evidence that one was carrying a pistol and the other money taken from the victim. At the scene of the arrest, one of these persons implicated appellant.

2. His competency to stand trial in May has never been challenged.

ent or odd about the fact he intended to escape. . . . That being the case, I'm prepared to set trial. [Supp. Record at 57–58.]

The following colloquy then occurred between defense counsel and the court:

THE COURT: I take it counsel is thinking of the possibility of not going forward with the insanity issue, is that right?

COUNSEL: That's correct.

[Supp. Record at 59–60.]

In April 1975, the trial judge, upon government motion and after advice from defense counsel that he was unable to proceed with the insanity defense because appellant was still a fugitive, stated in open court that appellant's absence "was a voluntary act on his part; his escape was not the product of any mental disease." The court thereupon entered a "final judgment" in the case. (Supp. Record at 63–64.)

In the latter part of 1975 appellant was apprehended and imprisoned in Maryland and charged with armed robbery allegedly committed in that state. In April 1976, he was permitted by Maryland to appear in the trial court for sentencing in the instant case and then returned to Maryland where he was sentenced there in December 1976. In February 1977, appellant was sentenced in the federal district court in this city for his escape while being transported from St. Elizabeths Hospital to the Superior Court and then sent back to Maryland to resume service of his sentence under the Maryland robbery conviction.

We now take up appellant's contentions on appeal. We start with the proposition that

the orderly administration of justice takes account on the one hand of the importance of a defendant's presence and, on the other hand, the need for control of the situation by the court . .

[and] if a defendant at liberty remains away during his trial the court may proceed provided it is clearly established that his absence is voluntary. He must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away. [*Cureton v. United States,* 130 U.S.App.D.C. 22, 27, 396 F.2d 671, 676 (1968).][3]

The record in the instant case makes clear that appellant was fully aware of the process taking place at the time he overpowered his guards and made his escape; after all, he had requested hospitalization following the verdict in his bifurcated trial for the purpose of determining whether a defense of insanity could be developed. He was aware of his obligation to remain in the hospital until he could be finally evaluated and then appear in court either for his sentencing or to proceed with an insanity defense.

■ As to the voluntariness *vel non* of his absence by reason of his running away, the testimony of the psychiatrist at the hearing the trial court held in March 1975 was that less than two months before his escape, appellant was *not* psychotic or suffering from a mental illness "which could have substantially impaired his behavioral controls." (Supp. Record at 17.) The doctor at the time of his testimony at the March 1975 hearing had not only interviewed appellant in October 1974, but he also had reviewed (1) the Hospital's ward notes concerning appellant, (2) the notes of the admitting physician at the Hospital, and (3) the notes of the Hospital's staff conference summary. In addition, the witness was familiar with appellant, having done an evaluation of him while on the staff of St. Elizabeths in 1970. We are not persuaded under the circumstances that the court erred in its conclusion that appellant's absence from the jurisdiction as an escaped

---

**3.** *See also* Super.Ct.Cr.R. 43(b), which provides in pertinent part: "[T]he defendant shall be considered to have waived his right to be present whenever a defendant, initially present, . . . . voluntarily absents himself after the trial has commenced . . . . ."

fugitive was voluntary. Accordingly, we cannot deem as error the court's determination to enter the judgment of conviction upon the jury's verdict.[4]

As to appellant's assertion that the government violated the provisions of the IAD in its handling of appellant's numerous criminal convictions in various jurisdictions, federal and state, the short answer is that appellant failed to advance to the trial court in the instant case at the time of his sentencing any claimed violation of the Agreement and he has failed to show good cause for such failure.[5] We are not persuaded that our refusal to notice on appeal his assertion concerning the Agreement would lead to a miscarriage of justice;[6] nor are we persuaded that the asserted error seriously affects the integrity of this judicial proceeding. *See Christian v. United States,* D.C.App., 394 A.2d 1, 37 (1978).

*Affirmed.*

4. We note the time sequence here, *viz.,* appellant was tried in May 1974, became a fugitive in December 1974, and the court proceeded to enter judgment in April 1975, which suggests the impracticability of retaining the jurors in the 1974 trial any longer after April 1975.

5. By the time appellant was sentenced in the trial court in this case, he had already been sentenced by two different federal district courts on two separate convictions and still faced formal charges in Maryland and the United States District Court here. Thus, he was fully aware of the various criminal proceedings pending against him when sentence was imposed here, so that he was then knowledgeable enough to request the compliance with the Act he now asserts on appeal has been lacking.

6. Appellant contends that the IAD was violated because neither the South Carolina nor the Maryland federal district courts regained custody of him but rather he became a prisoner of Maryland. These federal courts in his view thereby "abandoned him" and their sentences should be voided. Since the District of Columbia Superior Court likewise committed appellant to the custody of the Attorney General, he argues, it should have been deemed also to have "abandoned" him. This court is not persuaded by appellant's attempt to apply the IAD in such a fashion to the events that have occurred in his unusual spree of criminality.